**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSHUA NEWTON and ALEXANDER NEWTON,**<br><br>**Plaintiffs,**<br><br>**-against -**<br><br>**META PLATFORMS, INC.,**<br><br>**Defendant.** | **Case No.:** |

## COMPLAINT AND JURY DEMAND

Plaintiffs Joshua Newton and Alexander Newton, by their attorneys, Bienenfeld Law, as and for their Complaint against Defendant Meta Platforms, Inc., respectfully allege as follows:

## INTRODUCTION

1. Facebook, as a global social media company has a vast audience of users who utilize the platform to connect with other users and to view third-party content and advertisement. Facebook's revenue is directly derived from its advertising sales and maintains total control over what advertisement and content it allows on its platform.

2. Facebook's social media platform is unique in that no other social media platform reaches out to such a large proportion of the American public and stimulates such a vast degree of awareness *and* discussion.

3. Facebook has historically been known to allow hate-based speech, racist and anti-Semitic content to flood its platform notwithstanding its offensive, derogatory and dangerous nature.

4. In an effort to “clean-up” the platform Facebook introduced a new set of Community Standards, presumably to alleviate hate speech, propaganda, misinformation, racism and anti-Semitism.

5. Facebook has failed to live up to its written Community Standards and banned advertising of the film *Beautiful Blue Eyes* which presents the story of a Holocaust survivor and his reaction to meeting the Nazi that killed his family and committed numerous atrocities during World War II.

6. As a result of Facebook’s failure to follow its own Community Standards and guided by its habitual acts of anti-Semitism, the creators of *Beautiful Blue Eyes* were unfairly and wrongfully denied access to the Facebook platform to advertise the pre-theatrical release of the film and theme song, which negatively impacted the box office sales and will undoubtedly have a consequential negative effect on global ancillary sales.

7. Plaintiffs bring this action to collect monetary damages suffered as a result of Facebook’s discriminatory ban on advertisement, its fraudulent misrepresentation of its advertising policies and for an order directing Facebook to abide by its own Community Standards and cease and desist from its anti-Semitic behavior.

## PARTIES

8. Plaintiff Joshua James Newton is an individual and a resident of the United Kingdom.

9. Plaintiff Alexander Newton is an individual and a resident of the United Kingdom.

10. Defendant Meta Platforms, Inc. doing business as Meta and formerly named Facebook, Inc. and TheFacebook, Inc. is incorporated in the State of Delaware with its principal place of business located at 1601 Willow Road, Menlo Park, California.

11. Meta fully owns Facebook, Instagram and WhatsApp, among other products and services.

12. Meta, doing business as Facebook, does substantial business in all 50 states including New York and specifically the Southern District of New York.

13. There are over 230 million Facebook users in the United States – almost 70% of the country.

**JURISDICTION AND VENUE**

14. Defendant is subject to the jurisdiction of this court pursuant to Federal Rule of Civil Procedure 4, because Defendant is domiciled, has transacted business, continues to transact business, and has caused injury within the state and elsewhere.

15. Venue for this action properly lies in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

16. This Court's jurisdiction and venue are proper pursuant to 28 U.S.C, §1332 because the matter in controversy exceeds the value of $75,000 and is between citizens and corporations of different states.

***Beautiful Blue Eyes* – the film and song**

17. *Beautiful Blue Eyes*, a film written and directed by Joshua Newton, the son of Holocaust survivors, tells the story of an NYPD cop, the last role played by Roy Scheider, who has been haunted by the murder of his family by the Nazi's during WWII.

18. The lead role is the last role played by two-time Academy Award nominee Roy Scheider before his untimely death in 2008 from complications relating to multiple myeloma, a rare plasma cell cancer.

19. Completion of the film as envisioned by Newton was prevented due to technical failure of one of the cameras used in the shooting and the unavailability of Scheider to reshoot the scenes as a result of his untimely death.

20. In 2009, Newton assembled a version of the film titled *Iron Cross*, which won awards at film festivals but was never distributed.

21. With the passage of time came improved technology and specifically advances in AI which enabled in 2022 the repair of the damaged footage and allowed Newton to re-assemble the film as he originally envisaged.

22. Three days prior to his passing, Scheider asked Newton to retitle the film from *Iron Cross* to *Beautiful Blue Eyes*, which has been done for the 2022 version of the film.

23. The 2022 *Beautiful Blue Eyes* version of the film, 14 years after it was shot, secured a 431-screen theatrical release in the United States, commencing September 9. Such a large release is almost unprecedented for an independent film.

24. Beautiful Blue Eyes refers to the eye color of a child who died at the hands of the Nazis and invokes a key scene in the movie. https://www.dailymail.co.uk/news/article-11221099/amp/Facebook-BANS-ads-promoting-Roy-Scheider-Holocaust-movie-violates-race-policy.html

25. The film unfolds when Scheider's character believes he has found the Nazi responsible for his family's murder, alive and living under an assumed name in Nuremberg, Germany.

26. *Beautiful Blue Eyes* tells of the emotional aftermath of the Holocaust which many holocaust survivors have been forced to contend with. In 2010, as *Iron Cross*, Rabbi Marvin Hier, dean and founder of the Simon Wiesenthal Center and Museum of Tolerance, called it "The most

important film since Schindler's List". https://www.prnewswire.com/news-releases/museum-of-tolerance-international-film-festival-honors-clint-eastwood-for-body-of-work-and-iron-cross-with-remembrance-award-108399964.html.

27. The cast of *Beautiful Blue Eyes* included not only Roy Scheider, but well-known actors such as Scott Cohen, Sarah Bolger and Helmut Berger.

28. Alexander Newton, son of Joshua Newton, plays a young Roy Scheider and also wrote and performed the theme song.

29. The release of *Beautiful Blue Eyes*, in September 2022, came at a time when not only the United States is dealing with an upward trend of anti-Semitism and racism but when such hatred is on the rise worldwide.

30. "The Anti-Defamation League, which tracks anti-Semitic behavior nationwide, found 2,717 incidents in 2021. That's a 34 per cent rise from the year before and averages out to more than seven anti-Semitic incidents per day." *Antisemitic incidents hit a record high in 2021. What's behind the rise in hate*? PBS NewsHour Interview with Jonathan Greenblatt, CEO of the Anti-Defamation League, April 29, 2022.

31. As time goes on and there are fewer Holocaust survivors to tell of the horrors that occurred by the Nazis, works of art such as *Beautiful Blue Eyes* occupy an even more important place in our theaters and lives and are necessary to keep the memories alive.

32. Pivotal to the success of any film is the pre-release advertising.

**Facebook and its Anti-Semitic History**

33. Facebook has long been the subject of antisemitic practices.

34. In an effort to revamp its reputation and appear to address antisemitism and hate speech on its platform, on October 20, 2020, Facebook published its new policy on community standards designed to eliminate hate speech.

35. In its introduction to its new Community Standards, designed to address hate speech, it specifically states that the standards are designed to "ensure everyone's voice is valued, we take great care to create standards that include different views and beliefs, especially from people and communities that might otherwise be overlooked or marginalized." Facebook Community Standards. .

36. Meta, announced its updated Community Standards for Facebook and acknowledged the rise in anti-Semitism globally and specifically states that Facebook's policy was updated to "prohibit any content that denies or distorts the Holocaust." *Removing Holocaust Denial Content*, by Monika Bickert, VP of Content Policy, October 10, 2020. The aforementioned release further states as follows:

> Today's announcement marks another step in our effort to fight hate on our services. Our decision is supported by the well-documented rise in anti-Semitism globally and the alarming level of ignorance about the Holocaust, especially among young people. According to a recent survey of adults in the US aged 18-39, almost a quarter said they believed the Holocaust was a myth, that it had been exaggerated or they weren't sure.
>
> Institutions focused on Holocaust research and remembrance, such as Yad Vashem, have noted that Holocaust education is also a key component in combatting anti-Semitism. Beginning later this year, we will direct anyone to credible information off Facebook if they search for terms associated with the Holocaust or its denial on our platform.

37. Facebook's Community Standards set forth Meta's purported attempt to provide a space for free expression and explicitly state as follows:

> The goal of our Community Standards is to create a place for expression and give people a voice. Meta wants people to be able to talk openly about the issues that matter to them, even if some may disagree or find them objectionable. In some cases, we allow content – which would otherwise go against our standards – if it's newsworthy and in the public interest. We do this only after weighing the public interest value against the risk of harm, and we look to international human rights standards to make these judgments.
>
> Our commitment to expression is paramount, but we recognize the internet creates new and increased opportunities for abuse. For these reasons, when we limit expression, we do it in service of one or more of the following values:
>
> AUTHENTICITY
>
> ***
>
> SAFETY
>
> ***
>
> DIGNITY
>
> ***

38. In describing what Facebook defines as hate speech Facebook's Community Standards are clear.

> **Policy Rationale**
>
> We believe that people use their voice and connect more freely when they don't feel attacked on the basis of who they are. That is why we don't allow hate speech on Facebook. It creates an environment of intimidation and exclusion, and in some cases may promote offline violence.
>
> We define hate speech as a direct attack against people — rather than concepts or institutions— on the basis of what we call protected characteristics: race, ethnicity, national origin, disability, religious affiliation, caste, sexual orientation, sex, gender identity and serious disease. We define attacks as violent or dehumanizing speech, harmful stereotypes, statements of inferiority, expressions of contempt, disgust or dismissal, cursing and calls for exclusion or segregation. We also prohibit the use of harmful stereotypes, which we define as dehumanizing comparisons that have historically been used to attack, intimidate, or exclude specific groups, and that are often linked with offline violence.

See, https://transparency.fb.com/policies/community-standards/hate-speech.

39. The failure of social media companies, including Facebook, to appropriately confront anti-Semitism has recently been addressed on Capitol Hill in a hearing on September 16, 2022, by the Interparliamentary Anti-Semitism Task Force. Rep. Debbie Wasserman Schultz, who convened the hearing told the social media companies, including Facebook that "[w]e're all starting to see – anyone watching this – why we're eventually going to have to regulate the way that this content is handled, as opposed to just leaving it to you, the companies, to comply, to make sure you're complying with standards that really aren't transparent". https://forward.com/fast-forward/519328/hearing-antisemitism-big-tech/?utm_source=Iterable&utm_medium=email&utm_campaign=saturdayedition_5154535.

40. Even a cursory review of the film and song reveals that *Beautiful Blue Eyes* is not hate speech. It depicts the story of a holocaust survivor and what transpires after he encounters a man he believes was the Nazi who killed his family. It is a story that needs to be told and not banned. Furthermore, exposure to Beautiful Blue Eyes is directly in line with the policy behind Facebook's revamped Community Standards. See, *Removing Holocaust Denial Content*, by Monika Bickert, VP of Content Policy, October 10, 2020.

41. In order to create an account on Facebook, all users are required to click a box stating that they agree to abide by the terms of service which includes, *inter alia*, Facebook's Community Standards.

42. Facebook's Terms of Service specifically state at paragraph "5" as follows:

> **5. Other**
>
> 1. These Terms (formerly known as the Statement of Rights and Responsibilities) make up the entire agreement between you and Meta Platforms, Inc. regarding your use of our Products. They supersede any prior agreements.

See, Facebook Terms of Service https://www.facebook.com/legal/terms/update.

43. By joining Facebook every user enters into an enforceable contract with Meta

44. Despite its newly revised Community Standards, Facebook has failed to live up to the purported standards it set for itself and has failed to curb online hate speech on its platform and moreover, has failed to support its own efforts to fight hate on its platforms. See, Anti-Semitic social posts 'not taken down' in 80% of cases, BBC August 2, 2021 (https://www.bbc.com/news/technology-58058428 ); The Anti-Defamation League, December 1, 2021 (https://www.adl.org/blog/antisemitism-on-facebook-instagram-and-tiktok-in-response-to-middle-east-violence).

45. True to its prior criticized practices, rather than promoting *Beautiful Blue Eyes*, a film documenting the horrors of the Holocaust, which would inherently serve to educate those ignorant of the facts of the Holocaust, Facebook banned the pre-release advertising of the film.

46. The Plaintiffs, producers and media buyers for *Beautiful Blue Eyes* relied upon the terms set forth in Facebook's Term of Services and Community Standards in planning the advertising blitz for the film.

47. The advertisements and promotions for the film and the song were slated to begin running on early September 2022 and were timed to run immediately prior to and during the national release of *Beautiful Blue Eyes* in 431 Regal Theaters on September 9, 2022.

48. However, although the film does not contain hate speech and should not be subject to a ban on the Facebook platform, Facebook's algorithm initially banned all advertisements for *Beautiful Blue Eyes*, the film and its song, based solely on its title.

49. What is worse, is that after a requested review of the ban, Facebook intentionally and with flagrant disregard for the subject matter of the film, and holocaust survivors worldwide, upheld its decision and that it was its final decision.

50. Plaintiffs Joshua Newton and Alexander Newton, as second and third-generation Holocaust Survivors, like many others whose parents suffered and survived the Holocaust, have been deeply affected by the experiences of their parents. https://www.theguardian.com/lifeandstyle/2014/mar/15/trauma-second-generation-holocaust-survivors.

51. Many Holocaust survivors have been reluctant or unable to retell their experiences themselves and as in the case of Beautiful Blue Eyes rely upon second-generation survivors to tell of their experiences so they will not be forgotten. Notably, even Facebook's message about its Community Standards agrees that the world needs to be educated on the horrors of the Holocaust.

52. Plaintiffs Joshua Newton and Alexander Newton have suffered immeasurable harm as a result of Facebook's anti-Semitic ban of *Beautiful Blue Eyes*.

53. After first being exposed to the horrors of the Holocaust at age six (6), Plaintiff Joshua Newton was compelled to begin studying the Holocaust in his teens to try to make reason out of how such a thing could happen. To help answer that question and give a voice to those who perished and also those who survived, Plaintiff Joshua Newton embarked on two Holocaust genre feature film projects, one entitled *The Will To Resist*, and the other *Beautiful Blue Eyes*.

54. *Beautiful Blue Eyes* was finally completed as Joshua Newton originally envisaged. It is inspired by his late father who never spoke about his experiences growing up in Nazi Germany until the age of 82 when he was finally willing to be interviewed by Joshua Newton in London on video.

55. The harrowing video of the late Bruno Newton is what inspired *Beautiful Blue Eyes*, which not only reflects the relationship between Joshua Newton and his father but also addresses the very subject of second-generation Holocaust trauma.

56. After 14 years *Beautiful Blue Eyes* was ready to be released in theaters, more specifically, 431 theaters in the United States. No theater chain gives a movie that size a release unless it is confident it will perform.

57. It was devasting to the success of *Beautiful Blue Eyes* when Facebook banned the Newtons from advertising the film and song from the film, denying Plaintiffs access to the 70% of Americans who use Facebook

58. Moreover, it was devasting to the Newtons when even after an appeal by human reviewers, Facebook maintained its anti-Semitic ban with a blunt "This is our final decision".

59. Facebook's actions caused extreme emotional distress to the Newtons when the film and song were banned on Facebook and their lifelong efforts to continue the memory of the victims of the Holocaust, hundreds of them relatives, were dealt an irrecoverable blow in learning that without proper advertising the film would not reach the intended audience and their voices would essentially be silenced – thereby enabling Holocaust deniers to reach their goal – the exact opposition of the purpose of the film and the Community Standards promised by Facebook.

60. Furthermore, the ban by Facebook of *Beautiful Blue Eyes* also undermines the ability to obtain funding to produce Joshua Newton's screenplay, *The Will To Resist*, which recounts life in Nazi Germany.

61. The ban by Facebook has also caused Alexander Newton emotional distress. He has been affected by the experiences of his grandparents and the resulting trauma it has caused his father, and as an actor playing a Holocaust survivor, he has immersed himself deeply in the project only to be met by the anti-Semitic policy of Facebook.

62. The ban of advertising *Beautiful Blue Eyes* was reported in *RollingStone* Magazine on September 14, 2022, which reported that the film was banned because its title violated its

"policy against content that 'includes direct or indirect assertions or implications about a person's race'" https://www.rollingstone.com/tv-movies/tv-movie-news/facebook-holocaust-film-race-policy-1234592908/.

63. Upon learning that Facebook banned the film from its platform, the filmmakers immediate appealed the ban and were informed by Facebook that the ban was upheld. Specifically, Plaintiff was notified by Facebook that "[a]fter a requested review of your Facebook account, we confirmed it didn't comply with our Advertising Policies or other standards, … You can no longer advertise using Facebook Products. This is our final decision."

64. Alexander Newton, one of the stars of the film and the writer and performer of its theme song *Beautiful Blue Eyes*, was also told that all advertising and promotion on his Facebook and Instagram page was also permanently banned.

65. Thereafter, after public outcry over the ban and after the release of the film, on September 16 a Conde Nast publication called Ars Technica, reported that Facebook lifted the ban reporting that a spokesperson for Meta stated that "[w]e reviewed the ads and page in question and determined that the enforcement was made in error, so we lifted the restriction". "Righting a wrong - Facebook reverses permanent ban on Holocaust movie after outcry". ARS Technica, Ashley Belanger, September 16, 2022, https://arstechnica.com/tech-policy/2022/09/facebook-admits-to-error-banning-holocaust-movie-for-violating-race-policy/.

66. If not for the media attention received by the ban and the public outcry in response Facebook would not have reversed its decision

67. Facebook's decision to ban advertisements for *Beautiful Blue Eyes* was rooted in its long-standing anti-Semitic policies and not its Community Standards established to prevent the dissemination of hate speech.

68. Had Facebook properly reviewed the film and the song it would have seen that *Beautiful Blue Eyes* legitimately depicts events of the Holocaust, does not violate Facebook's Community Standards and does not constitute hate speech. In its review, Facebook would have encountered many websites about the film confirming its legitimacy and subject matter. Its review would have established that the film was a Holocaust film being released on September 9, 2022. https://variety.com/2022/film/global/roy-scheider-last-film-beautiful-blue-eyes-1235231748/;https://collider.com/roy-scheider-beautiful-blue-eyes-theatrical-release-jaws-regal-theaters.

69. Facebook would have noted that Joshua Newton, "A British Jewish film director has been honoured at the Boston Film Festival with its Visionary Filmmaker Award" for the film, as *Iron Cross*. https://www.thejc.com/news/uk/director-s-holocaust-revenge-film-celebrated-1.18552

70. Facebook would have further noted that Newton's son, Alexander Newton won the Boston Film Festival's Best Young Actor Award for his role as the younger Holocaust survivor in the film. https://www.imdb.com/name/nm1772842/awards?ref_=nm_awd.

71. Facebook would also have noted that the film, as *Iron Cross*, was awarded at the Museum of Tolerance International Film Festival in 2010, where "Rabbi Marvin Hier, founder of the museum, described Newton's film as "the most important…since Schindler's List". https://www.thejc.com/news/all/clint-eastwood-and-british-director-honoured-at-los-angeles-gala-1.19409.

72. In spite of being aware of the authenticity of the film, its Holocaust genre and the film's accolades, Facebook decided, on appeal, to uphold its ban on the film and that "This is our final decision". Furthermore, in banning advertisements for Alexander Newton's song from the

film, Facebook would have done so noting the legitimacy of the song and its connection to the film. https://www.youtube.com/watch?v=wdXqoydTsHY.

73. Pivotal to the success of any film is advertising and that the advertisement be timed to reach its target audience immediately prior to the release in order to generate knowledge of and interest in the film and entice people to purchase tickets to watch the film.

74. The advertising campaign for *Beautiful Blue Eyes*, as with many films, was centered on Facebook and Instagram ads.

75. Although Facebook now claims that the "ban" has been lifted the damage has already been done. *Beautiful Blue Eyes* did not generate the enthusiasm it would have, had the ads been permitted to timely run.

76. Box office sales of tickets along with revenue generated by the release of *Beautiful Blue Eyes* have been substantially less than anticipated had it been properly advertised.

77. After one week, the number of theaters that were showing *Beautiful Blue Eyes* was reduced from 431 to only 5. The five remaining theaters stopped showing the film on September 23, 2022.

78. Moreover, the "ban" was only lifted to the extent that the Plaintiffs have been permitted to place ads for theatrical release. The film's Facebook Account Quality page displays a notification headed "Page reviewed" "After a requested review we determined that this Page is authorized to run ads that don't sell products online". This means that the film is not permitted to run ads in regard to online digital sales.

79. The box office generated during a film's US theatrical release substantially influences the financial value of all ancillaries, domestic and foreign.

80. Facebook's anti-Semitic actions of banning all pre-theatrical release advertisements and its subsequent ban on online digital sales will undoubtedly have a detrimental impact on the film's global performance.

**AS AND FOR A FIRST CAUSE OF ACTION**
**Breach of Contract**

81. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

82. By joining Facebook and agreeing to the Terms of Service published by Facebook, Plaintiffs and Defendant entered into a contract, the terms of which include abiding by the Community Standards, as amended from time to time.

83. The Community Standards in effect in September 2022, when Facebook wrongly and discriminatorily banned advertisement and content posts of *Beautiful Blue Eyes*, stated that Facebook would not permit content which constitutes hate speech.

84. Facebook's Community Standards, by definition do not categorize *Beautiful Blue Eyes* as hate speech.

85. Facebook breached its obligations pursuant to the Terms of Service contract by banning content and advertisements of *Beautiful Blue Eyes*.

86. Plaintiffs have performed all of their obligations pursuant to the Terms of Service Contract.

87. As a direct and proximate result of Defendant's breach, Plaintiffs have sustained damages in the form of lost revenue from box office ticket sales, online digital sales of *Beautiful Blue Eyes* and all domestic and foreign ancillary sales.

88. Accordingly, Defendant is liable to Plaintiffs, in an amount to be determined by this Court but in no event less than $100 million.

**AS AND FOR A SECOND CAUSE OF ACTION**
**Fraud and Detrimental Reliance**

89. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

90. Facebook stated that its Community Standards were revised to combat the rising acts of anti-Semitism in the United States and abroad.

91. The producers and media buyers for Beautiful Blue Eyes relied on the Community Standards in establishing the advertisement campaign for the film.

92. The statements made by Facebook in its Community Standards and in promoting its revamped Community Standards are false and misleading and were known to be false and misleading at the time they were made.

93. As a result of the false statements made by Facebook, Plaintiffs were left with no cost-effective advertising options during the release of the film and the weeks immediately leading up to the release.

94. As a direct result of Facebook's false and misleading statements, Plaintiffs have been damaged in an amount to be determined by this Court but in no event less than $100 million.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

95. Plaintiffs repeat and reallege each and every allegation set forth above as if fully set forth herein.

96. Facebook, despite its public statements to the contrary, banned *Beautiful Blue Eyes* from its platform based upon its racist and anti-Semitic practices.

97. Facebook's conduct, based upon anti-Semitism is repugnant.

98. As second and third-generation Holocaust survivors, the Newton Plaintiffs devoted years of their lives to researching and producing films about the Holocaust to educate the public and combat antisemitism as well as give a voice to those that perished and those who have been traumatized by the events of the Holocaust.

99. Facebook has caused emotional distress to the Newton Plaintiffs by depriving them of access to the Facebook community and designating Beautiful Blue Eyes as hate speech.

100. As a direct result of Facebook's intentional actions, Plaintiffs have been damaged in an amount to be determined by this Court but in no event less than $500 million.

**WHEREFORE**, for the foregoing reasons, Plaintiffs demands judgment against Defendant as follows:

(i) on the first cause of action for breach of contract, a judgment against Defendant awarding to Plaintiffs damages in an amount to be determined at trial, but in any event, no less than $100,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii) on the second cause of action for fraud and detrimental reliance, a judgment against Defendant awarding to Plaintiffs damages in an amount to be determined at trial, but in any event, no less than $100,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(iii) on the third cause of action for intentional infliction of emotional distress, a judgment against Defendant awarding to Plaintiffs damages in an amount to be determined at trial, but in any event, no less than $500,000,000, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(iv) such other and further relief as the Court deems just, equitable and proper.

**JURY DEMAND**

The Newtons demand a trial by jury of all issues presented herein that are triable by a jury.

**Dated: New York, New York**
**October 24, 2022**

**BIENENFELD LAW**
*Attorneys for Plaintiffs*

**By:** ***/s/ Saul Bienenfeld***

Saul Bienenfeld, Esq.
680 Central Avenue
Suite 108
Cedarhurst, New York 11516
Telephone: (212) 363-7701
saul@bienenfeldlaw.com